J-A10017-22

2022 PA Super 124

| | | |
|---|---|---|
| KIM RAYMOND AND BRIAN HANNIS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellants | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARCY RAYMOND | : | No. 1186 MDA 2021 |

Appeal from the Order Entered August 10, 2021,
in the Court of Common Pleas of Lackawanna County,
Civil Division at No(s): 2021-40327.

BEFORE: PANELLA, P.J., KUNSELMAN, J., and KING, J.

OPINION BY KUNSELMAN, J.:               **FILED: JULY 20, 2022**

In this matter, we must determine whether a third-party can assert a claim for custody against a child's guardian, whom the child's parent selected as the caregiver upon the parent's death.

Appellants Kim Raymond and Brian Hannis, the maternal Grandparents,[1] sought custody of their five-year-old granddaughter, M.I. (the Child). The Lackawanna County Court of Common Pleas dismissed their complaint for lack of standing under the Child Custody Act. *See* 23 Pa.C.S.A. § 5324(4). Specifically, the trial court determined that the Grandparents met the first two prongs of the statute, but failed to establish that "[n]either parent has any form of care and control of the child" under Section 5324(4)(iii). The court determined the Child's parent exercised a posthumous "form of care and

_____

[1] The Appellants are the biological maternal grandmother and the step-grandfather of the Child.

control," because he had selected Marcy Raymond (the Great-Aunt[2]) to be the Child's guardian upon his death. After careful review, we vacate the order and remand for further proceedings.

The record discloses a complex factual and procedural history. From the outset, we clarify that the current dispute is between the Grandparents and the Great-Aunt. How these parties became the Child's prospective caregivers is as follows:

The Child came to the trial court's attention in 2016 when the Lackawanna County Office of Children and Family Services initiated dependency proceedings against the biological parents. When the court removed the Child from her parents' care, the court initially placed the Child with the Great-Aunt for a short time, before ultimately placing her with the paternal grandparents, Amy and Michael Isernia, Sr. In September 2017, the Child's biological mother died. In March 2018, the court terminated the rights of the Child's biological father. Following the termination, the paternal grandparents adopted the Child and became her legal parents. (Hereafter, we refer to the paternal grandparents as the Adoptive Parents to reflect their legal status.)

The Adoptive Parents and the Grandparents then entered into a Voluntary Post-Adoption Contact Agreement pursuant to the Act of Oct. 27, 2010, P.L. 961, No. 101 *codified as amended* 23 Pa.C.S.A. §§ 2731-2742

_____

[2] Marcy Raymond is the sister of the biological maternal grandfather, who is not a party.

(commonly referred to as an "Act 101 Agreement"). Under the terms of the Act 101 Agreement, the Grandparents received eight weeks of annual visitation, comprising of a two-week block and a six-week summer block.

Two years later, in July 2020, the Adoptive Mother passed away. In early 2021, Adoptive Father was diagnosed with terminal cancer. This diagnosis prompted the Grandparents to file an emergency petition for custody and formal custody complaint against Adoptive Father.[3] In their complaint, the Grandparents sought standing under Section 5324(3)(iii)(B) and under Section 5324(4) of the Child Custody Act, alleging that the Adoptive Father's illness prevented him from caring for the Child. **See** 23 Pa.C.S.A. § 5324(3)(iii)(B), (4). The motions judge denied the request for emergency custody but scheduled the underlying custody complaint before a master.

The master held a hearing on April 7, 2021. During the hearing, Adoptive Father raised the issue of standing; the master apparently then terminated the proceeding and directed the parties to submit briefs on standing. **See** Report and Recommendation, 5/6/21, at *1 (not paginated). After reviewing the briefs, the master issued a report and recommendation on May 6, 2021. The master determined many facts were not disputed. The master concluded that the terms of the Act 101 Agreement governed and that the Grandparents lacked standing. The master recommended that the

---

[3] Typically, a child's adoption severs the rights of grandparents to seek custody. However, when the child is adopted by another grandparent – as was the case here – the petitioning grandparents retain the right to seek custody. **See** 23 Pa.C.S.A. § 5326 ("Effect of adoption").

custody complaint be dismissed.  The Grandparents filed exceptions before the trial court.

In May 2021, while those exceptions were pending, the Adoptive Father died.[4]  In June 2021, the Great-Aunt filed her own petition for emergency custody.  She retained the same attorneys who represented the Adoptive Father in the custody action with the Grandparents.  The emergency petition included the caption "***In re M.M.I***," and left the docket number blank.   The Great-Aunt alleged that she stood *in loco parentis*, because the Adoptive Father had asked her to care for the Child, which she had been doing since early 2021, when the Adoptive Father was diagnosed with cancer.  The Great-Aunt further alleged that Adoptive Father named her to be the Child's guardian in his will.

The trial court granted the Great-Aunt's emergency petition and scheduled the matter for a hearing the following week. ***See*** Order of Court, 6/3/21.  In doing so, the court changed the proposed "***In re M.M.I.***" caption to reflect the ongoing litigation between the Grandparents and Adoptive Father.  The court effectively joined the Great-Aunt.[5]  The Great-Aunt then

---

[4] The Grandparents then filed a second emergency petition for custody to reflect the changed circumstances. The court denied this second petition for lack of standing. ***See*** Order of Court, 5/21/21. The Grandparents filed for reconsideration, which the court also denied. ***See*** Order of Court, 5/24/21. Evidently, the court intended to address the impact of the Adoptive Father's death on the custody case when it heard the pending exceptions from the Grandparents' custody complaint.

[5] We have amended the caption to reflect the true parties in interest in this litigation.

filed a formal custody complaint the next day, on the same docket as the pending action, and she served the Grandparents. The Grandparents contested the Great-Aunt's complaint, and the court stayed the final hearing, pending the resolution of Grandparents' exceptions on the standing issue. **See** T.C.O. at 4.

On August 3, the trial court held an oral argument on the exceptions. The court ultimately concluded that the Grandparents failed to establish standing under either Section 5324(3) or (4). On August 10, 2021, the court dismissed the exceptions and adopted the master's report and recommendation. The Grandparents appealed.

On appeal, the Grandparents raise an excessive number of errors.[6] Many are duplicative, or they are an inaccurate characterization of the trial court's rulings, or they represent hypothetical errors depending on our decision, or they are moot in light of the Adoptive Father's death. "It is well established that the appellate courts of this Commonwealth will not decide moot or abstract questions." **WFIC, LLC v. LaBarre**, 148 A.3d 812, 819 (Pa. Super. 2016) (citing **Commonwealth v. Smith**, 486 A.2d 445, 447 (Pa. Super. 1984)); **see also In re D.A.**, 801 A.2d 614, 616 (Pa. Super. 2002)

_____

[6] The Grandparents raised 24 issues in their concise statement of errors complained of on appeal; in their Brief, they reduced that number to 21 questions involved. We caution Grandparents' counsel that a **concise** statement, which is too vague or voluminous could lead to waiver. **See, e.g., Commonwealth v. Vurimindi**, 200 A.3d 1031 (Pa. Super. 2018); **see also Commonwealth v. Heggins**, 809 A.2d 908, 911 (Pa. Super. 2002) ("Even if the trial court correctly guesses the issues [an] appellant raises on appeal and writes an opinion pursuant to that supposition the issues [may] be waived.").

- 5 -

("An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect."). We decline to address such issues.[7] We consider only the following four questions involved, which we reorder for ease of disposition:

> 1. Whether the trial court erred in law and/or abused its discretion in failing to preside over an evidentiary hearing and apply the statutory factors [under 5324(4)] to the matter before [the trial] court, when neither [the trial] court nor the custody master presided over an evidentiary hearing.
>
> 2. Whether the trial court erred in law and/or abused its discretion in concluding that the [Grandparents] lack standing to seek custody of the Child, pursuant to 23 Pa.C.S.A. § 5324(4)[.]
>
> 3. Whether the trial court erred in law and/or abused its discretion when it found that [Great-Aunt] stood *in loco parentis* to the Child without holding an evidentiary hearing on the same?

_____

[7] More specifically, we decline to address issues pertaining to 23 Pa.C.S.A. § 5326 ("Effect of adoption"), **supra**. Contrary to the Grandparents' assertion, neither the master nor the trial court concluded that Section 5326 prevented the Grandparents from seeking custody.

We decline to address issues relating to 23 Pa.C.S.A. § 5328(a). The trial court did not, indeed could not, analyze the best interests of the Child without determining the threshold inquiry of standing.

We decline to address issues concerning 23 Pa.C.S.A. § 5324(3)(iii)(B). The question of whether Adoptive Father's terminal illness constituted "parental incapacity" under 5324(3)(iii)(B) was rendered moot upon the Adoptive Father's death.

Finally, we decline to address issues concerning what effect that the Act 101 Agreement had on the ability of the Grandparents to seek custody. The Adoptive Father's death also rendered this question moot.

4. Whether the trial court erred in law and/or abused its discretion when it found that [Great-Aunt] stood *in loco parentis* to the minor child.

***See generally*** Grandparents' Brief at 5-10 (capitalization adjusted).

In their first appellate issue, the Grandparents claim the trial court erred when it appointed a master to resolve the question of standing; they argue further that the trial court compounded its error when, following their exceptions to the master's report, the court denied their request for an evidentiary hearing.

We begin by observing that a challenge to a court's process is a question of law for which our standard of review is *de novo* and our scope of review is plenary. ***See S.T. v. R.W.***, 192 A.3d 1155, 1160 (Pa. Super. 2018) (citation omitted).

We agree with the Grandparents' assertion that the motion judge should never have scheduled their complaint for sole custody before the master. While the Rules of Civil Procedure authorize the appointment of a hearing officer[8] to adjudicate actions for ***partial*** custody, it is well-settled that actions for ***primary*** custody must be heard by a trial court judge. ***See*** Pa.R.C.P. 1915.4-1(a), 1920(a)(2)(ii); ***see also Littman v. Van Hoek***, 789 A.2d 280,

---

[8] The Explanatory Comment to this Rule provides that the term "conference officer" and "hearing officer" are functional equivalents. In this instance, so is the term "master." We also note that "master" is now a disfavored term and should be replaced by "hearing officer." ***See*** Pa.R.C.P. 1920.51. For the sake of continuity, we use the term "master."

282 (Pa. Super. 2001); *and see Van Dine v. Gyuriska,* 713 A.2d 1104 (Pa. 1998).

However, the trial court cured this mistake when it effectively conducted a *de novo* review of the standing claim. A *de novo* trial court review occurs when the court "determine[s] the merits of the [legal question] and issue[s] its own findings of fact and conclusions of law." *See City of Clairton v. Zoning Hearing Board of City of Clairton*, 246 A.3d 980, 906 (Pa. Cmwlth. Ct. 2021) (citation omitted); *see also T.B. v. L.R.M.*, 753 A.2d 873, 881-82 (Pa. Super. 2000) (*en banc*) ("[T]he trial court is required to make an *independent review* of the record to determine whether the hearing officer's findings and recommendations are appropriate.") (emphasis added) *aff'd* 786 A.2d 913 (Pa. 2001) (*infra*).

This type of review is precisely what the court conducted following the Grandparents' exceptions. The exceptions proceeding was ostensibly a review of the master's decision; in actuality, the trial court considered all that had transpired since the master's report – specifically, the fact that Adoptive Father had died, and that the Great-Aunt had joined the litigation, obtained *in loco parentis* status, and was awarded sole custody. The court considered these facts, concluded that none of the salient facts were disputed, applied those facts to render new legal conclusions and independently determined the merits of the Grandparents' claims. *See* T.C.O. at 14.[9]

---

[9] We acknowledge that the trial court's August 10, 2021 order "adopted" the master's report and recommendation, but we give little credence to the *pro*

*(Footnote Continued Next Page)*

Thus, the trial court's exceptions review was akin to an adjudication of standing in the first instance. In that sense, not only did the trial court cure its erroneous master appointment, but the court was also able to dispose of the standing issue without conducting an evidentiary hearing. "When no issues of fact are raised, the court shall dispose of the preliminary objections as a matter of law on the basis of the pleadings alone." ***R.M. v. J.S.***, 20 A.3d 496, 508-09 (Pa. Super. 2011) (citation omitted); ***see also C.G. v. J.H.*** 172 A.3d 43, 54 (Pa. Super. 2017) (observing that while standing claims commonly necessitate an evidentiary hearing to resolve the factual dispute, some standing issues can turn on pure questions of law), *aff'd* 193 A.3d 891 (Pa. 2018) (***infra***). Here, the essential facts were uncontested, and the standing issue turned on a pure question of law.

Having concluded that the trial court's procedure did not constitute reversible error, we turn to the merits of the court's decision on standing. In their second appellate issue, the Grandparents challenge the court's conclusion that they lacked standing under Section 5324(4)(iii).

Threshold issues of standing are questions of law; thus, our standard of review is *de novo* and our scope of review is plenary. ***See e.g., K.W. v. S.L.***, 157 A.3d 498, 504 (Pa. Super. 2017) (citing ***Johnson v. American Standard***, 8 A.3d 318, 326 (Pa. 2010)).

---

*forma* language contained in the order. The master's report was predicated upon the terms of the Act 101 Agreement and the fact that the Adoptive Father was still alive. Upon its review, all the court adopted was the master's end result - *i.e.*, that the Grandparents lacked standing.

Generally, the Child Custody Act does not permit third parties to seek custody of a child contrary to the wishes of that child's parents. The Act provides several exceptions to this rule, which apply primarily to grandparents and great-grandparents. *See* 23 Pa.C.S.A. §§ 5324(3), 5325 ("Standing for partial physical custody and supervised physical custody."). A person standing *in loco parentis* may also seek custody. *See* 23 Pa.C.S.A. § 5324(2).

"The term *in loco parentis* literally means 'in the place of a parent.'" *K.W.*, 157 A.3d at 504-05 (citing Black's Law Dictionary, 791 (7th Ed. 1991)) (further citation omitted). A person stands *in loco parentis* with respect to a child when he or she "assumes the obligations incident to the parental relationship without going through the formality of a legal adoption. The status of *in loco parentis* embodies two ideas; first, the assumption of a parental status, and, second, the discharge of parental duties." *Id.* at 505 (citation omitted).

In 2018, the Child Custody Act was amended to grant standing to another class of individuals. *See* 23 Pa.C.S.A. § 5324(4). Section 5324(4) provides that the following individuals may file for any form of physical or legal custody:

> (4) [...] an individual who establishes by clear and convincing evidence all of the following:
>
> > (i) The individual has assumed or is willing to assume responsibility for the child.
> >
> > (ii) The individual has a sustained, substantial and sincere interest in the welfare of the child. In determining whether the individual meets the

requirements of this subparagraph, the court may consider, among other factors, the nature, quality, extent and length of the involvement by the individual in the child's life.

**(iii) Neither parent has any form of care and control of the child.**

23 Pa.C.S.A. § 5324(4) (emphasis added).[10]

To establish standing, a petitioner must satisfy all three of these prongs. Here, the trial court opined that the Grandparents met the first two prongs. **See** T.C.O. at 9. Thus, the Grandparents' claim turns on the third prong, whether "[n]either parent has any form of care and control of" the Child. 23 Pa.C.S.A. § 5324(4)(iii). The trial court determined that the Grandparents failed to establish this element:

When [Adoptive Father] underwent cancer treatment in early 2021, he took the necessary steps to find an appropriate caretaker for the [C]hild. [A]ny parent (biological or adoptive) has a right to designate a caretaker for their minor child if he or she is sick. Further, at the time of the [Adoptive Father's] death, caretaker [the Great-Aunt] stepped in and acted *in loco parentis* for the minor child, at [the Adoptive Father's] direction. [Adoptive Father's] care and control of the minor child continued after his death by providing a suitable caretaker for the minor child.

T.C.O. at 10.

---

[10] We note that Section 5324(4) also includes disqualifying criteria. Section 5324(4) will not apply if: (1) a dependency proceeding involving the child has been initiated or is ongoing, or (2) there is an order of permanent legal custody under 42 Pa.C.S.A. § 6351(a)(2.1) or (f.1)(3)(relating to the disposition of dependent children). **See** 23 Pa.C.S.A. § 5324(5)(i)-(ii). Neither of these disqualifying conditions were present in this case.

The Great-Aunt advances a slightly different rationale in support of the trial court's decision. She argues that she effectively became "a parent" for purposes of Section 5324(4)(iii), by virtue of her *in loco parentis* status combined with the fact that the Adoptive Father's will named her to be the Child's caregiver upon his death. Accordingly, she also concludes the Grandparents could not establish that "neither parent has any form of care or control of the child." 23 Pa.C.S.A. § 5324(4)(iii).

To support her argument, Great-Aunt relies on Chapter 25 of the Probate, Estates and Fiduciaries Code. That section provides in relevant part:

> **(a) Guardian of the person.**-- A person competent to make a will, being the sole surviving parent or adopting parent of any unmarried minor child, may appoint a testamentary guardian of the person of such child during his minority, or for any shorter period except that no parent who, for one year or upwards previous to his death, shall have willfully neglected or refused to provide for his child, or who, for a like period, shall have deserted the child or willfully failed to perform parental duties, shall have the right to appoint a testamentary guardian of the person of such child.

20 Pa.C.S.A. § 2519(a)("Guardian of the person"); *c.f.* § 2519(b) ("Guardian of the estate"). The Great-Aunt also relies on this Court's decision in *In re Slaughter*, 738 A.2d 1013 (Pa. Super. 1999).

In *Slaughter*, a 12-year-old child was orphaned after her father died. In his will, the father named the child's aunt and uncle to be the child's guardians. The father chose these relatives, and not the child's 26-year-old brother, primarily because the father wanted the brother to focus on his career

and not be burdened with raising his sister. **Slaughter**, 738 A.2d at 1014. The brother wanted to care for his sister and petitioned to be appointed as her guardian. The lower court treated the matter as if it were a custody dispute and denied the brother's petition, finding that it was in the child's best interest to be in the care of aunt and uncle. The brother appealed.

On appeal, we noted that the lower court's decision to treat the case as a custody dispute was reasonable, but ultimately misguided because Section 2519 controlled. **Id.** at 1016-17 (footnoted omitted). We then sought to ascertain and effectuate the legislative intent behind Section 2519. **Id.** at 1017; **see also** 1 Pa.C.S.A. § 1921. We explained that the word "may" in the statute meant that the appointment of a testamentary guardian by a parent is a right granted by the legislature. **Id.** "We cannot, however, reasonably read the term to mean that enforcement of the testamentary guardianship is optional on the courts." **Id.** To do so would render 20 Pa.C.S.A. § 2519 an absurdity, because it would give the parent a right that has no enforceable value. **Id.**

We reasoned that the statute compelled us to ask: "Who better than the surviving parent should make the choice as to who might care for her child after her death?" **Id.** We concluded that Section 2519 grants this right. **Id.** However, we concluded that this right is not unassailable. We held that Section 2519 necessarily raised a *prima facie* presumption in favor of the testamentary appointment. However, that appointment may be defeated where another petitioner for guardianship can show convincing reasons as to

why the testamentary appointment should not stand. *Id.* (citing *Ellerbe v. Hooks*, 416 A.2d 512, 513 (Pa. 1980)). We cautioned that the burden was a heavy one. *Id.* Ultimately, we determined the court did not err in upholding the testamentary appointment.

Great-Aunt's reliance on *Slaughter* is misplaced. *Slaughter* was simply a contest between testamentary guardians and another potential guardian. The issue was not whether a third-party could seek custody against a testamentary guardian. Under the prior iteration of the Child Custody Act, the brother had no standing to seek custody. *See, e.g., D.N. v. V.B.*, 814 A.2d 750 (Pa. Super. 2002) (holding that a half-sibling had no legal standing to seek custody of her minor siblings, because the half-sibling did not qualify under the standing statutes enacted by the Legislature, §§ 5311-5313.). Indeed, under the prior iteration of the Child Custody Act, only grandparents could petition for custody when a parent was deceased. *See* 23 Pa.C.S.A. § 5311 (repealed).

Here, by contrast, the Grandparents are permitted to seek custody if they obtain standing under Section 5324(4). Great-Aunt would have us rule that once a testamentary guardian obtains custody of a child, that guardian is immune from third-party custody actions. But if a third-party can seek custody against a parent under the Child Custody Act, they should certainly be able to seek custody against a guardian. To rule otherwise would produce an absurd result - namely that the rights of guardians are superlative to the rights of parents.

We recognize that parents have a right to appoint a testamentary guardian under 20 Pa.C.S.A. § 2519. However, courts must "presume that the General Assembly is familiar with extant law when enacting legislation." *C.B. v. J.B.*, 65 A.3d 946, 951 (Pa. Super. 2013) (citing *White v. Conestoga Title Ins. Co.*, 53 A.3d 720, 731 (Pa. 2012)). Therefore, we must presume that the General Assembly intended for 23 Pa.C.S.A. § 5324(4) to coexist with 20 Pa.C.S.A. § 2519; and neither statute precludes a third-party action against a testamentary guardian.

To resolve whether the Grandparents have standing in this case, we initially ascertain and effectuate the Legislature's intent in promulgating Section 5324(4). When interpreting a statute,

> we are constrained by the rules of statutory interpretation, particularly as found in the Statutory Construction Act. 1 Pa.C.S.A. §§ 1501–1991. The goal in interpreting any statute is to ascertain and effectuate the intention of the General Assembly. Our Supreme Court has stated that the plain language of a statute is in general the best indication of the legislative intent that gave rise to the statute. When the language is clear, explicit, and free from any ambiguity, we discern intent from the language alone, and not from the arguments based on legislative history or "spirit" of the statute. We must construe words and phrases in the statute according to their common and approved usage. We also must construe a statute in such a way as to give effect to all its provisions, if possible, thereby avoiding the need to label any provision as mere surplusage.
>
> Under Section 1921(c), the court resorts to considerations of "purpose" and "object" of the legislature when the words of a statute are not explicit.... Finally, it is presumed that the legislature did not intend an absurd or unreasonable result. In this regard, we ... are permitted to

- 15 -

> examine the practical consequences of a particular interpretation.

*C.B.*, 65 A.3d at 951 (citations omitted).

As noted, courts must not interpret a statute in a manner that leads to an absurd result. *Id.* at 953; *see also Wilson v. Central Penn Indus., Inc.*, 452 A.2d 257, 259 (Pa. Super. 1982) ("A construction which fails to give effect to all provisions of a statute or which achieves an absurd or unreasonable result must be avoided.") (citations omitted); *and see Commonwealth v. Sloan*, 907 A.2d 460, 467 (Pa. 2006) ("[O]ur rules of statutory construction [forbid] absurd results.").

With these principles in mind, we return to the various rationales set forth by the trial court and the Great-Aunt. The trial court opined that Adoptive Father's care and control of the child "continued after his death." *See* T.C.O. at 10 (citing 23 Pa.C.S.A. § 5324(4)(iii)). However, the statute uses the present tense to evaluate care and control: "Neither parent *has* any form of care or control of the child." Thus, the question is whether either parent has, presently, at the time of the decision, any form of care or control of the child. We find the use of the present verb tense to be "clear, explicit, and free from any ambiguity." *See C.B.*, *supra*. Upon his death, it cannot be said that the Adoptive Father still *has* such control.[11] We conclude the court's rationale does not comport with the plain reading of the statute.

_____

[11] *See M.W. v. S.T.*, 196 A.3d 1065, 1071 (Pa. Super. 2018) (holding that while the grandparent originally had standing at the time she filed the custody complaint, the trial court did not err when it dismissed the complaint for lack

*(Footnote Continued Next Page)*

Alternatively, the Great-Aunt argues that she should be treated as "a parent" for purposes of Section 5324(4)(iii), because she stands *in loco parentis* and because Adoptive Father named her to be the Child's guardian in his will. The Great-Aunt's interpretation would require us take the term from Section 5324(2)("a person who stands *in loco parentis*") and insert it next to the word "parent" in Section 5324(4)(iii). But although we may interpret a statute, we may not re-write it.

To explain, Section 5324 provides standing to four classes of individuals: (1) a parent; (2) a person who stands *in loco parentis*; (3) a grandparent in certain circumstances; and (4) any individual who establishes certain criteria by clear and convincing evidence. **See** 23 Pa.C.S.A. § 5324(1)-(4). We decline to treat these classes of individuals as interchangeable. Our approach is not taken without guidance.

In **C.G. v. J.H.**, 193 A.3d 891 (Pa. 2018), our Supreme Court declined to treat a mother's former same-sex partner as "a parent" for purposes of Section 5324(1). Because Section 5324 does not define the term parent, the High Court explained that "the popular and plain everyday sense of the term must prevail." **C.G.**, 193 A.3d at 900 (citations omitted). The Court held that "[t]he popular and everyday meaning of the term parent plainly encompasses a biological mother and a biological father and persons who attain custody

_____

of standing; the court was free to consider the change in circumstances between the grandparent's complaint and the parents' petition to dismiss.)

- 17 -

through adoption….” *Id.* (citations omitted);[12] *cf. T.B. v. V.R.M.*, 786 A.2d 913, 915 (Pa. 2001) (holding that mother's former same-sex partner stood *in loco parentis* as evidenced by, *inter alia*, the mother's decision to name the partner as the child's guardian in the mother's will).

This Court has held that “[t]he rights and liabilities arising out of an *in loco parentis* relationship are, as the words imply, exactly the same as between parent and child.” *In re B.L.J., Jr.*, 938 A.2d 1068, 1073 (Pa. Super. 2007) (citation omitted). The rights and responsibilities may be the same, but the classes of individuals are not. *See C.G.*, *supra*; *see also* 23 Pa.C.S.A. § 5327(b) (providing that in any action between a parent and a third party, “there shall be a presumption that custody shall be awarded to the parent.”); *cf.* § 5327(c) (providing that there is no presumption of custody in an action between third-parties).

Accordingly, the plain language makes clear that for the purposes of Section 5324: a “parent” is a “parent” and “a person who stands *in loco parentis*” is “a person who stands *in loco parentis*.” Thus, the existence of an individual with *in loco parentis* status has no bearing on the question of whether “[n]either *parent* has any form of care or control of the child” under

---

[12] Importantly, the Supreme Court acknowledged “the reality of the evolving concept of what comprises a family.” *C.G.*, 193 A.3d at 900. But in that case, the Supreme Court declined to further expand the definition of the “parent” under Section 5324(1), because the former partner “did not jointly participate in the child's conception and hold [the child] out as her own.” *Id.* at 906. The Court subsequently considered whether the former partner stood *in loco parentis*.

- 18 -

Section 5324(4)(iii). To rule otherwise would fail to give effect to all provisions of the statute. *C.B.* 65 A.3d at 953.

To be clear, the Adoptive Father's choice of the Great-Aunt to be the Child's caregiver is absolutely a consideration in the substantive custody analysis under 23 Pa.C.S.A. § 5328(a)("Factors to consider when awarding custody"). *See* 23 Pa.C.S.A. § 5328(a)(16) ("Any other relevant factor"). We further recognize that it is within the custody court's purview to determine which Section 5328(a) factors are "the most salient and critical." *E.B. v. D.B.*, 209 A.3d 451, 468 (Pa. Super. 2019) (citation omitted). And we also note that deference must be afforded to the custody court on matters concerning credibility and weight of the evidence. *E.B.*, 209 A.3d at 460. As such, we could envision a scenario, where a court, after considering all the relevant custody factors, gives dispositive weight to the fact that the deceased parent left a will, explicitly naming a testamentary guardian, especially if the parent contemplated the guardianship around the time of the death. *But see* 23 Pa.C.S.A. § 5328(a) ("[T]he court shall…giv[e] weighted consideration to those factors which affect the safety of the child.").[13]

---

[13] Absent further guidance from our Supreme Court or from the Legislature, we will not create a presumption in favor of the testamentary guardian as a matter of law, when the Child Custody Act explicitly states there is no presumption in a custody action between third-parties. 23 Pa.C.S.A. § 5327(c).

Be that as it may, the parent's choice of guardian does not bar other qualified individuals from seeking custody; the appointment of a guardian has no effect on standing to file custody.[14]

Absent further guidance from our Supreme Court, we conclude that a parent cannot posthumously exercise care and control of a child, and we conclude further that a third-party's *in loco parentis* status does not preclude another third-party from seeking custody under Section 5324(4). Therefore, we hold that the trial court erred as a matter of law when it determined that the Grandparents failed to establish standing under Section 5324(4)(iii). Adoptive Mother predeceased Adoptive Father, and once Adoptive Father died, "neither parent has any form of care or control of the child." The Great-Aunt's *in loco parentis* status had no bearing on this prong.

Lastly, we turn to the Grandparents' third and fourth appellate issues. The Grandparents argue the trial court erred when it determined that Great-Aunt stood *in loco parentis* without conducting an evidentiary hearing. In the alternative, the Grandparents argue that the court erred as a matter of law when it determined the same.

Upon review, we conclude neither of these claims have merit. First, as we explained in our discussion above, the trial court did not have to conduct

---

[14] Such an appointment would mean, however, that a child is not a "dependent child" under the Juvenile Act. **See** 42 Pa.C.S.A. § 6302 (Defining a "dependent child" as "a child who: (4) is without a parent, guardian, or legal custodian).

Although this Child is without a parent, she is not without a guardian or legal custodian.

an evidentiary hearing on standing, because the facts were not in dispute. *See R.M.*, 20 A.3d at 508-09. The Grandparents conceded that the Great-Aunt had been caring for the Child even before the Adoptive Father's death. Indeed, when the Grandparents initially filed for custody, under Section 5324(3)(iii)((B)("the child is substantially at risk due to parental…incapacity"), they acknowledged that Adoptive Father enlisted the Great-Aunt to care for the Child after his terminal cancer diagnosis. Because of this, they argued that Adoptive Father lacked the ability to parent. The Grandparents cannot have it both ways; they cannot rely on the Great-Aunt's assumption of the parental role to demonstrate Adoptive Father's incapacity under Section 5324(3)(iii)(B), but then claim that the Great-Aunt did not assume the parental role to achieve *in loco parentis* status under Section 5324(2).

Second, and for this very reason, the trial court did not err as a matter of law when it concluded that the Great-Aunt stood *in loco parentis*. The Great-Aunt obtained *in loco parentis* status when the Adoptive Father asked her to care for the Child, in her home, following his diagnosis and eventual physical decline. At this point, Adoptive Father discharged his parental duties, and those duties were assumed by the Great-Aunt. *See K.W.*, 157 A.3d at 504.

Moreover, the Adoptive Father's will appointed the Great Aunt to be the Child's caregiver following his death. Because the Child remained with the Great-Aunt upon the death, and because the Adoptive Father was the sole surviving parent, the will's appointment necessarily gave the Great-Aunt the

ability to assume parental duties. *See* 20 Pa.C.S.A. § 2519(a) ("Guardian of the person"); *also See T.B.* 786 A.2d at 915 (recognizing the designation of a guardian in a parent's will as a reason why the would-be guardian stood *in loco parentis*).

In sum, we conclude that the trial court did not err when it determined that an evidentiary hearing on standing was unnecessary; the question of standing, as it pertained to both the Grandparents and the Great-Aunt, was a pure question of law. The court did not err when it concluded that the Great-Aunt stood *in loco parentis*. However, the court erred as a matter of law when it determined that the Grandparents failed to establish standing under 23 Pa.C.S.A. § 5324(4)(iii), when both of the Child's Adoptive Parents were deceased. All other appellate issues are dismissed, waived, or moot. We vacate the August 10, 2021 order dismissing the Grandparents' complaint for custody, and direct the court to conduct further proceedings consistent with this Opinion.[15]

---

[15] We clarify that our holding is limited to the question of standing to seek any form of custody. We do not disturb the June 6, 2021 order granting custody to the Great-Aunt, which appears to be the operating custody order. But insofar as the June 6 order is the operating custody order, we direct the court to treat the June 6 order as an interim custody order pending the final resolution of the Grandparents' custody complaint.

Order vacated.  Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/20/2022