J-S12016-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| TAYLOR M. FINDLEY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ARIANNA KENNEDY, BRIAN C. | : | No. 1482 MDA 2022 |
| PINCIN, DARLENE & ROBERT SWIFT | : | |

Appeal from the Order Entered October 3, 2022
In the Court of Common Pleas of Lancaster County Civil Division at
No(s): CI-22-01398

BEFORE:  KUNSELMAN, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY McCAFFERY, J.:                    **FILED JUNE 15, 2023**

In this case, we must decide whether a third party — specifically, a 25-year-old paternal cousin of a minor child — has established standing to pursue a custody action pursuant to the Child Custody Act.[1]  Taylor Findley (Appellant), appeals from the order entered October 3, 2022, in the Lancaster County Court of Common Pleas, sustaining the preliminary objections of Appellees, Darlene Swift (Paternal Grandmother) and Robert Swift (Paternal Grandfather) (collectively, Paternal Grandparents),[2] and dismissing her

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 23 Pa.C.S. §§ 5321-5340.

[2] While Robert Swift is Appellant's and Child's step-grandfather, Appellant testified that she considered him her grandfather.  **See** N.T., 9/8/22, at 11.

J-S12016-23

complaint for custody of A.L.P. (Child), born in July 2016, with prejudice.[3]

After review, we vacate and remand.

The trial court summarized the factual and procedural history of this matter, in part, as follows:

> [Child] is the minor biological child of Brian C. Pincin [(Father)] and Arianna Kennedy [(Mother), (collectively, Parents)]. [C]hild was born out of wedlock. Throughout the life of [ ] Child, [Parents] have struggled with drug addictions and [Father with] intermittent incarceration. Paternal Grandparents have been [ ] Child's primary caretakers since approximately March of 2017.[4] [Appellant, Child's paternal cousin,] first began interacting with Child when [he] was approximately five [or] six months old. Her initial visit[] with [ ] Child occurred at the home of Steven and Angela Findley, who are [ ] Child's [p]aternal [u]ncle and [a]unt [(Paternal Aunt and Uncle)].[5]

Trial Ct. Op., 11/22/22, at 2.

Appellant visited with Child at the homes of Paternal Aunt and Uncle and Paternal Grandparents. *See* N.T. at 10. Appellant then resided with Paternal Aunt and Uncle from the end of 2018 until August 2020. *See id.* at 11-12.

_____

[3] As an appeal lies from a final order, unless permitted by rule or statute, and a final order is one that disposes of all claims and all parties, this matter is properly before this Court. *See Stewart v. Foxworth*, 65 A.3d 468, 471 (Pa. Super. 2013); *see also* Pa.R.A.P. 341(b).

[4] At some point thereafter, at least three years prior to the hearing, Parents executed a guardianship agreement. *See* N.T. at 25, 69, 93-94.

[5] Appellant's mother is Father's and Angela Findley's sister. As such, Father is her maternal uncle; Paternal Grandparents are her maternal grandparents; and Paternal Aunt and Uncle are her maternal aunt and uncle. *See* N.T. at 9.

- 2 -

Child was in the home "pretty much every night," and Appellant would interact with him "on a daily basis."[6] *Id.* at 11, 13.

After Appellant moved into her own home in August 2020, she testified to not seeing Child as frequently initially. She then continued seeing Child through Paternal Aunt and Uncle and Paternal Grandparents, including occasional overnights. *See* N.T. at 14-15. Beginning in the summer of 2021, she began taking Child Tuesdays through Thursdays and every other weekend. *See id.* at 17, 57. Child has had a bedroom in Appellant's home since September 2021. *See id.* at 19. Appellant stated that Child has routine and structure in her home. She feeds and bathes Child and ensures he brushes his teeth during his time with her. *See id.* at 38-40.

In March 2022, Appellant had a conversation with Paternal Grandparents about Child living with her permanently, after which Paternal Grandfather suggested a trial period. *See* N.T. at 22, 100. Subsequently,

> [Appellant] detailed a precipitating event that raised questions in her mind about the ability of [Paternal] Grandparents to care for [] Child.[7] As a result of the incident, she contacted

_____

[6] Appellant described an extended period of time following Child's first birthday where Paternal Grandparents kept Child from her and Paternal Aunt and Uncle. *See* N.T. at 34-35, 57.

[7] Shortly after Child spent an extended period of time with Appellant, Paternal Grandfather declined to allow Child to go with Appellant and began screaming profanities at her. *See* N.T. at 23-25. Appellant noted concerns as to a threat to sever her relationship with Child, as well as the lack of care for Child's teeth. *See id.* at 36.

*(Footnote Continued Next Page)*

Lancaster County Children and Youth Agency.[8]    [Appellant] ultimately filed a [c]omplaint for [c]ustody on March 11, 2022.[9]

Following the filing of the Complaint and presentation of the Complaint in Family Business Court, attended by [P]aternal [G]randparents with [c]ounsel, th[e trial c]ourt entered a temporary Order dated March 21, 2022 granting shared legal [c]ustody to [ ] Appellant and Paternal Grand[mother], and granted [Appellant] periods of partial custody.[10]   On April 7, 2022, Paternal Grandparents filed preliminary objections, challenging [Appellant]'s right to seek custody of the minor child. . . .

_____

Appellant further expressed concerns regarding Paternal Grandparents' drug use.  **See** N.T. at 24, 27, 36. 24, 27, 36.  Specifically, Appellant testified to witnessing Paternal Grandfather with a powdery substance, which she assumed was "meth," four years ago, **id.** at 28-29, as well as a conversation only months ago where Paternal Grandfather stated that he "had done drugs and sold drugs" Appellant's whole life, **id.** at 29-30.  Appellant also indicated that Paternal Grandmother participated in a methadone program.  **See id.** at 30.  Paternal Grandmother acknowledged being on methadone due to past OxyContin use.  **See id.** at 91-93.  Likewise, Paternal Grandfather conceded to past drug use.  While he stated that he had been sober for "over a year," he noted a prescription for OxyContin and confirmed positive drug testing in March 2022.  **Id.** at 109-111.

[8] Paternal Grandfather testified that a child services investigation was conducted and closed.  **See** N.T. at 110-11.

[9] Appellant sought primary physical and sole legal custody of Child, asserting standing pursuant to 23 Pa.C.S. § 5324(2) and (4).  **See** Complaint for Custody, 3/11/22, at ¶¶ 40-41.

[10] The court awarded Appellant physical custody every Tuesday from 9:00 a.m. to Thursday at 7:00 p.m., every other weekend from Friday at 7:00 p.m. to Sunday at 7:00 p.m., and other times as agreed.  The court further awarded Parents supervised physical custody as agreed and supervised by Paternal Grandmother.  **See** Order, 3/21/22, at 1-2 (unpaginated); **see also** N.T. at 25-26.

Trial Ct. Op. at 3. Appellant sought the necessary medical and dental treatment for Child, including overdue vaccinations, and enrolled Child in school and attended school functions. *See* N.T. at 40-44.

The court conducted a hearing on Paternal Grandparents' preliminary objections on September 8, 2022. Appellant, Paternal Grandparents, and Parents were all present. Appellant and Paternal Grandparents were represented by counsel, while Parents appeared *pro se*. Appellant, Paternal Grandparents, and Mother all testified on their own behalf. Additionally, Appellant presented the testimony of Paternal Uncle.[11]

By order dated September 26, 2022, and entered October 3, 2022,[12] the court sustained Paternal Grandparents' Preliminary Objections and dismissed Appellant's complaint for custody with prejudice. On October 13, 2022, Appellant, through counsel, filed a timely notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P.

_____

[11] Following the evidentiary hearing, the trial court requested the submission of letter briefs. *See* N.T. at 114-18. We observe that the letter briefs were not docketed or included with the certified record.

[12] The subject order was dated September 26, 2022. However, notice pursuant to Pa.R.C.P. 236(b) was not provided until October 3, 2022. Our appellate rules designate the date of entry of an order as "the day on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by Pa.R.C.P. 236(b)." Pa.R.A.P. 108(b). Further, our Supreme Court has held that "an order is not appealable until it is entered on the docket with the required notation that appropriate notice has been given." *Frazier v. City of Philadelphia*, 735 A.2d 113, 115 (Pa. 1999).

1925(a)(2)(i) and (b).[13]  The trial court filed an Opinion pursuant to Rule 1925(a) on November 22, 2022.

On appeal, Appellant raises the following issues for our review:

1. Did the trial court err in finding that [Appellant] lacked standing to pursue custody of the minor child, when [Appellant] had assumed and was willing to assume responsibility of the minor child; has a sustained, substantial and sincere interest in the welfare of the child and neither parent had any form of care and control of the child, establishing the elements necessary for standing pursuant to 23 Pa.C.S. § 5324(4) by clear and convincing evidence?

2. Did the trial court err in finding that [Appellant] lacked standing to pursue custody of the minor child pursuant to 23 Pa.C.S. § 5324(2), when [Appellant] had a parent-like relationship with the minor child, enjoyed a strong bond with the minor child and performed parental duties for the minor child on a regular basis?

Appellant's Brief at 6.[14]

_____

[13] By order dated October 17, 2022, and entered October 18, 2022, the trial court directed opposing counsel to file an Answer addressing those issues raised in the Rule 1925(b) concise statement by November 7, 2022.  Counsel for Paternal Grandparents complied on November 14, 2022.  Notably, he further indicated that he no longer represented Paternal Grandparents and referenced a *praecipe* to withdraw as counsel filed with this Court on November 7, 2022.  Paternal Grandparents' Answer to Concise Statement of Errors Complained of on Appeal Pursuant to Pa.R.A.P. 1925(a)(2), 11/14/22, at 2 (unpaginated).  We observe that neither Paternal Grandparents nor Parents have filed a brief with this Court.

[14] While Appellant presents her issues differently than in her concise statement, we conclude that she has preserved those issues raised.  However, to the extent Appellant raised claims in her concise statement that were not included in her statement of questions involved, those issues are waived.  ***See In re M.Z.T.M.W.***, 163 A.3d 462, 465-66 (Pa. Super. 2017) (citations omitted) (explaining, in part, this Court will not review an appellant's claim unless it is included in both the concise statement of errors complained of on appeal and statement of questions involved).

As to the relevant standard and scope of review, we have stated, "Threshold issues of standing are questions of law; thus, our standard of review is *de novo* and our scope of review is plenary." **Raymond v. Raymond**, 279 A.3d 620, 627 (Pa. Super. 2022) (citation omitted).

Further, with regard to third party cases arising under the Child Custody Act, we note the following:

Generally, the Child Custody Act does not permit third parties to seek custody of a child contrary to the wishes of that child's parents. The Act provides several exceptions to this rule, which apply primarily to grandparents and great-grandparents. **See** 23 Pa.C.S.[] §§ 5324(3), 5325 ("Standing for partial physical custody and supervised physical custody."). A person standing *in loco parentis* may also seek custody. **See** 23 Pa.C.S.[] § 5324(2).[15]

"The term *in loco parentis* literally means 'in the place of a parent.'" **K.W.**[ **v. S.L.**, 157 A.3d 498, 504-05 (Pa. Super. 2017)] (citing Black's Law Dictionary, 791 (7th Ed. 1991)) (further citation omitted). A person stands *in loco parentis* with respect to a child when he or she "assumes the obligations incident to the parental relationship without going through the formality of a legal adoption. The status of *in loco parentis* embodies two ideas; first, the assumption of a parental status, and, second, the discharge of parental duties." **Id.** at 505 (citation omitted).

In 2018, the Child Custody Act was amended to grant standing to another class of individuals. **See** 23 Pa.C.S.[] § 5324(4). Section 5324(4) provides that the following individuals may file for any form of physical or legal custody:

---

[15] "The following individuals may file an action under this chapter for any form of physical custody or legal custody: . . . (2) A person who stands *in loco parentis* to the child. . . ." 23 Pa.C.S. § 5324(2) (italics added).

> (4) [. . .] an individual who establishes by clear and convincing evidence all of the following:
>
>> (i) The individual has assumed or is willing to assume responsibility for the child.
>>
>> (ii) The individual has a sustained, substantial and sincere interest in the welfare of the child. In determining whether the individual meets the requirements of this subparagraph, the court may consider, among other factors, the nature, quality, extent and length of the involvement by the individual in the child's life.
>>
>> (iii) Neither parent has any form of care and control of the child.
>
> 23 Pa.C.S.[ ] § 5324(4) [ ].
>
> To establish standing, a petitioner must satisfy all three of these prongs.

**Raymond**, 279 A.3d at 627 (emphasis omitted; footnote omitted).

However, a separate subsection of this statute provides that Section 5324(4) "shall not apply if: (i) a dependency proceeding involving the child has been initiated or is ongoing; or (ii) there is an order of permanent legal custody under 42 Pa.C.S.[] § 6351(a)(2.1) or (f.1)(3)(relating to the disposition of dependent children)." 23 Pa.C.S. § 5324(5)(i)-(ii).

Noting that the trial court solely focused on Appellant's standing under Section 5324(2), Appellant argues that she established standing pursuant to Section 5324(4), satisfying all three required statutory elements. **See** Appellant's Brief at 23. Appellant asserts that, "[t]hrough her words and

actions[, she] has demonstrated she not only took responsibility for [ ] Child but is willing to take responsibility for [ ] Child moving forward." *Id.* at 25. She points to the increasing amount of time Child has spent at her home, including regular, weekly time since summer 2021, and associated caretaking duties. *See id.* at 23. She further indicates her discussion with Paternal Grandparents regarding permanently caring for Child, her eventual filing for custody due to suspected drug use, and her role in Child's dental and medical care and education since being granted temporary legal custody. *See id.* at 24-25. Appellant additionally affirms a sustained, substantial, and sincere interest in Child borne of their lengthy relationship and bond. *See id.* at 25-26. She underscores the importance of Child's health and safety, again referencing her filing for custody due to concern for suspected drug use, Child's lack of dental care, and threats to sever her relationship with Child, as well as her engagement regarding Child's medical and dental care and education. *See id.* at 27-28. Appellant also emphasizes her discussion with Paternal Grandparents involving Child permanently residing with her, which she contends reflects Paternal Grandparents' acknowledgment of this heightened interest in Child's welfare. *See id.* at 28. Likewise, she claims that the trial court conceded her demonstrated interest in Child's welfare during the hearing and noted her bond and "significant time" with Child in its Rule 1925(a) Opinion. *Id.* at 28-29. Lastly, Appellant contends that Parents have no care or control with regard to Child. *See id.* at 29. She argues,

"[P]arents are not a regular presence in [ ] Child's life, and they have not been involved in any parenting duties or medical care for [ ] Child." *Id.* at 30.

Upon review, we conclude that the trial court erred in determining that Appellant lacked standing under Section 5324(4). Initially, we address together the first two prongs of this subsection since they interrelated — (1) assumption of responsibility and (2) a sustained, substantial, and sincere interest for Child's welfare.

The record reveals an extended relationship between Appellant and Child, beginning in Child's infancy, whereby Child spent increasing time with Appellant. *See* N.T. at 10-15. As noted *supra*, Child began spending occasional overnights with Appellant after August 2020, *see id.*, at 14-15, and, since summer 2021, he has resided with Appellant Tuesdays through Thursdays and every other weekend, *see id.* at 17, 57. In turn, during this time, Appellant provided Child routine and structure and performed parental duties. *See id.* at 38-40.

Appellant stated that she and Child are absolutely bonded and that she loves Child "very much." N.T. at 37, 45-46. She testified that she has assumed responsibilities for Child and is willing to assume responsibility moving forward. *See id.* at 45.

While Paternal Grandparents claimed ignorance as to Appellant's increasing time with Child and disputed that this custody schedule, however formal or informal, arose prior to the trial court issuing its temporary custody

order,[16] *see id.* at 84-87, 96-99, 103, 105-08, Paternal Uncle confirmed Appellant's increasing time and close relationship with Child, *see id.* at 68-69, 72. Moreover, the trial court credited Appellant's testimony and indicated that she "enjoyed a bond" with and spent "significant time" with Child and "recently started performing caretaking duties." Trial Ct. Op. at 6. Further, during Appellant's testimony, the court further indicated that she had proven a sustained, substantial, sincere interest in Child.

> [COUNSEL FOR APPELLANT]: I think I have to, obviously, establish that my client has a sustained, substantial, and sincere interest in the welfare of the child.
>
> THE COURT: Okay. And you did that through your direct examination.

N.T. at 75. As such, Appellant established that she has assumed or is willing to assume responsibility for Child and has a sustained, substantial, and sincere interest in the welfare of Child. *See* 23 Pa.C.S. § 5324(4)(ii).

Finally, as to the third prong of Section 5324(4), the record reveals a lack of care or control by Parents. Parents have substance abuse issues and left Child in the care of Paternal Grandparents in March 2017, with whom they do not reside, as they were unable to care for him. *See* N.T. at 33-34, 84, 89-90, 112-13. Father has been "in and out" of jail and was incarcerated at the time of the hearing. *Id.* at 31, 90, 96. They have not provided child care

---

[16] Paternal Grandparents likewise dispute any agreement related to Child permanently residing with Appellant. *See* N.T. at 86-87, 99-100, 106-07.

or been around Child unsupervised since that time. ***See id.*** at 13-14, 16, 47-48, 88-90. As Appellant described, "[Parents] never . . . stepped up to take control of [Child] . . . when they would come around." ***Id.*** at 47-48. Hence, Appellant established standing pursuant to Section 5324(4).[17]

Accordingly, the court erred as a matter of law by sustaining the preliminary objections filed by Paternal Grandparents and dismissing Appellant's complaint for custody with prejudice. Therefore, we vacate the October 3, 2022, order. We remand to the trial court for entry of an order overruling Paternal Grandparents' preliminary objections and for further proceedings consistent with this memorandum.[18]

Order vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/15/2023

---

[17] Given the finding of standing pursuant to Section 5324(4), it is not necessary to address Section 5324(2).

[18] Although we find Appellant has standing to pursue custody of Child, we make no comment as to whether an award of custody in Appellant's favor under 23 Pa.C.S. § 5328 would be in Child's best interest.