J-A06022-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| B.S. AND T.B. | : | IN THE SUPERIOR COURT OF |
| Appellants | : | PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| E.U. AND S.B. | : | |
| | : | No. 1256 WDA 2025 |
| | : | |

Appeal from the Order Entered September 9, 2025
In the Court of Common Pleas of Blair County Civil Division at No(s):
2024-02050

BEFORE:  OLSON, J., MURRAY, J., and BECK, J.

MEMORANDUM BY MURRAY, J.:                    **FILED: March 17, 2026**

B.S. and T.B. (Foster Parents) appeal from the order dismissing their complaint for partial physical custody of O.U. (a male born in July 2018) (Child), and granting the preliminary objections filed by Child's biological father, E.U. (Father), after concluding Foster Parents lacked standing to seek partial custody.[1,2] Because we agree that Foster Parents lacked standing to file the instant custody action, we affirm.

---

[1] Throughout this memorandum, we use the parties' initials rather than their full names to protect the identities of the parties and, most importantly, Child. We have amended the caption accordingly.

[2] Child's biological mother, S.B. (Mother), is not a party to the instant appeal.

Foster Parents cared for Child from October 2021 until October 2024, during a dependency action involving Child.[3]  On October 15, 2024, Child was returned to Father's full legal and physical custody.

On July 11, 2024, while Child was still in their care, Foster Parents filed a custody complaint, seeking full legal and physical custody of Child.  Foster Parents alleged Mother and Father have a lengthy history of drug addiction, and neither parent has shown a change in their behaviors.  Custody Complaint, 7/11/24, ¶ 11; *see also id.* ¶ 12 (referencing an incident in which Mother overdosed during a court proceeding and indicated she would choose drugs over Child).

CYF filed preliminary objections to Foster Parents' complaint on August 2, 2024.  CYF alleged that Foster Parents lacked standing to initiate a custody action.  CYF emphasized that it maintained physical and legal custody of Child throughout the related dependency proceedings.

Father, *pro se*, filed preliminary objections on August 12, 2024, echoing CYF's assertion that Foster Parents lacked standing to bring the custody action.

---

[3] Blair County Children, Youth, and Families (CYF) noted that it had obtained custody of Child during the dependency proceedings, and Child was adjudicated dependent on October 11, 2021.  CYF's Preliminary Objections, 8/2/24, ¶ 4.  Previously, CYF filed a petition for involuntary termination of Mother's and Father's parental rights, which the orphans' court denied.  *Id.*, ¶ 5.  We note that the certified record before this Court does not contain any of the filings from the dependency docket.

Foster Parents filed a response to CYF's preliminary objections, arguing that they stood *in loco parentis* to Child, thereby establishing standing under 23 Pa.C.S.A. § 5324(2). Response to CYF's Preliminary Objections, 9/23/24, ¶¶ 12-18. Foster Parents emphasized that, at that time, Child remained exclusively in their care. *Id.*, ¶ 2.

On May 28, 2025, after Child was returned to Father's physical custody and care,[4] Foster Parents filed an amended custody complaint, seeking partial physical custody of Child. In their amended complaint, Foster Parents alleged they had standing under section 5324(4) and (5).[5]

Father filed *pro se* preliminary objections, again challenging Foster Parents' standing. The trial court issued a rule to show cause why it should not grant Father relief. In response, Foster Parents argued they stood *in loco parentis* to Child by providing for Child's care throughout his three-year placement.

The trial court heard oral argument on Foster Parents' custody complaint on August 28, 2025. At the close of the hearing, the trial court concluded that Foster Parents lacked standing to pursue custody, and issued an order

---

[4] As we discuss *infra*, it is unclear from the record whether Father obtained legal custody of Child.

[5] Foster Parents abandoned their claim that they had stood *in loco parentis* after Child was returned to Father's care.

granting Father's preliminary objections and dismissing Foster Parents' complaint for partial custody.[6]

Foster Parents promptly filed a notice of appeal and a simultaneous Pa.R.A.P. 1925(a)(2)(i) concise statement of errors complained of on appeal.[7] The trial court filed a Rule 1925(a) opinion.

Foster Parents raise the following issue for review:

> Did the trial court err in entering an order of court dismissing [Foster Parents'] complaint for partial [physical] custody where [Foster Parents] established, by clear and convincing evidence, that (i) they have assumed or are willing to assume responsibility of the Child[;] (ii) they have a sustained, substantial and sincere interest of the Child[;] and (iii) neither parent has any form of care and control of the Child, pursuant to 23 Pa.C.S.[A.] § 5324(4) and (5)?

Foster Parents' Brief at 4 (some capitalization modified).

Foster Parents argue they have standing to file a custody action under 23 Pa.C.S.A. § 5324(4) and (5). Foster Parents' Brief at 16-17. According to Foster Parents, the factor at issue in this matter is the requirement (under

---

[6] The order was docketed on September 9, 2025.

[7] On October 31, 2025, Foster Parents filed a motion for special relief in this Court, arguing they served Mother, via priority mail, with a copy of their notice of appeal and Rule 1925(a)(2)(i) concise statement, but that Mother refused to retrieve the certified mail from the U.S. Postal Service. Foster Parents also alleged that the sheriff's attempted service was also unsuccessful. Foster Parents therefore sought an extension of time in which to serve Mother and requested alternative service. Motion for Special Relief, 10/31/25. This Court dismissed Foster Parents' motion as moot, citing Pa.R.A.P. 121(c)(2) (providing that service may be made by priority mail, "which service is complete upon mailing."). Order, 12/3/25.

subsection 5324(4)(iii)) that neither parent has any form of care and control of Child. *Id.* at 17-18. Foster Parents assert they had assumed responsibility for Child by exclusively providing for his care during the 3 years he spent in placement, and that they will continue to assume responsibility. *Id.* at 20-21. Foster Parents also claim they have a sustained, substantial, and sincere interest in Child's welfare, as evidenced by their role as a foster placement for approximately 3 years. *Id.* at 21-22; *see also id.* at 22-23 (Foster Parents arguing their continued litigation is proof of their commitment to Child's wellbeing). Additionally, Foster Parents contend that "despite re-assuming physical custody of [C]hild, [] Father has not exhibited any form of care or control of him." *Id.* at 23. In support of this contention, Foster Parents aver the following:

> While [] Father was perplexingly awarded primary physical custody of … [C]hild in October 2024, he has not demonstrated a commitment to parenting [Child] since then. In fact, not only is [] Father living in documented inappropriate housing[,] but regularly does not have proper childcare for … [C]hild while he is at work. [] Father has also admitted to leaving his marijuana vape pen and Narcan within reach of … [C]hild, which is concerning on its own, but is made more concerning when combined with the fact that he is also residing with [] Mother, an active drug addict who has previously exposed … [C]hild to illegal substances. This certainly is the opposite of providing care of … [C]hild.

*Id.* at 24.

Father counters that Foster Parents cannot establish the third requirement of section 5324(4) (*i.e.*, that neither parent has any form of care and control of Child), because "custody [of Child] was vested in [Father] with

the [c]ourt's approval." Father's Brief at 9. Father points out that CYF had legal custody of Child throughout the dependency action. *Id.* at 9-10. Father also argues that Foster Parents' interest in Child's welfare is not sincere:

> Once the [orphans'] court maintained the goal of return to parent[ in the dependency action,] and as Father continued to progress, [Foster Parents] did not encourage or facilitate a relationship with [] Father but filed their own private involuntary termination of parental rights proceedings.

*Id.* at 10 (some capitalization modified). Father emphasizes that Child was returned to his physical custody with the approval of the orphans' court, CYF, Child's guardian *ad litem*, and Mother's counsel. *Id.* at 12.

"Standing relates to the capacity of an individual to pursue a particular legal action, and requires the petitioning litigant to be adversely affected, or aggrieved, in some way." *Interest of K.N.L.*, 284 A.3d 121, 136 (Pa. 2022). The threshold issue of standing is a question of law. *See M.S. v. J.D.*, 215 A.3d 595, 598 (Pa. Super. 2019). Hence, "our standard of review is *de novo* and our scope of review is plenary." *Id.*

The Child Custody Act governs "disputes relating to child custody matters." 23 Pa.C.S.A. § 5321. "Generally, the Child Custody Act does not permit third parties to seek custody of a child contrary to the wishes of that child's parents." *M.S.*, 215 A.3d at 598-99 (citation omitted). Importantly,

> [i]n the area of child custody, principles of standing have been applied with particular scrupulousness because they serve a dual purpose: not only to protect the interest of the court system by assuring that actions are litigated by appropriate parties, but also to prevent intrusion into the protected domain of the family by those who are merely strangers, however well-meaning.

- 6 -

*Id.* at 598 (citation omitted).

Section 5324 clarifies who may file an action for physical or legal custody of a child. In particular, Foster Parents claim they have standing under subsections 5324(4) and (5), which provide as follows:

**§ 5324. Standing for any form of physical custody or legal custody**

The following individuals may file an action under this chapter for any form of physical custody or legal custody:

\* \* \*

(4) **Subject to paragraph (5)**, an individual who establishes by clear and convincing evidence all of the following:

(i) The individual has assumed or is willing to assume responsibility for the child.

(ii) The individual has a sustained, substantial and sincere interest in the welfare of the child. In determining whether the individual meets the requirements of this subparagraph, the court may consider, among other factors, the nature, quality, extent and length of the involvement by the individual in the child's life.

(iii) Neither parent has any form of care and control of the child.

(5) **Paragraph (4) shall not apply if**:

(i) a dependency proceeding involving the child has been initiated or is ongoing; or

(ii) there is an order of permanent legal custody under 42 Pa.C.S. § 6251(a)(2.1) or (f.1)(3) (relating to disposition of dependent child).

23 Pa.C.S.A. § 5324(4)-(5) (emphasis added). A petitioner must establish all three prongs of section 5324(4) in order to establish standing. ***Raymond v. Raymond***, 279 A.3d 620, 627 (Pa. Super. 2022).

Here, in its opinion, the trial court concluded section 5324(5)(i) precludes Foster Parents from asserting standing, because Child is involved in an ongoing dependency action. Trial Court Opinion, 11/5/25, at 4. ***But see id.*** at 1 (stating that "full legal and physical custody of [Child] was returned to [Father]" on October 15, 2024). The trial court is correct that, assuming the dependency action remains ongoing, the language of section 5325(b)(i) expressly prevents Foster Parents from asserting standing. However, we note that Father claims the dependency action was closed following Child's return to his care in October 2024. ***See*** Father's Brief at 18; ***see also*** N.T., 8/28/25, at 8 (Father's counsel in the dependency action[8] asserting that the dependency action closed, as the orphans' court returned both physical and legal custody of Child to Father in October 2024). From the record before us, which is entirely separate from the dependency docket, we are unable to

_____

[8] Father was not represented by counsel during the custody proceedings initiated by Foster Parents. However, Suzanne Bigelow-Cherry, Esquire (Attorney Bigelow-Cherry), attended the oral argument held in this matter on August 28, 2025, "as a friend of the court." N.T., 8/28/25, at 1; ***see also id.*** at 9 (Attorney Bigelow-Cherry requesting leave to speak on Father's behalf, and asserting that she would formally enter her appearance on the record if the court wished). Attorney Bigelow-Cherry stated that she represented Father in the dependency action, and wanted to be sure the trial court had the relevant information. ***Id.*** at 1-2. Attorney Bigelow-Cherry informed the trial court that "[a]ll of the issues of standing were already factually determined in those other court proceedings." ***Id.*** at 2.

ascertain whether the dependency action pertaining to Child remains open, or whether it was, in fact, closed when Child was returned to Father's care.

The trial court concluded, and we agree, that Foster Parents nevertheless lack standing under section 5324(4). Trial Court Opinion, 11/5/25, at 4. Assuming, *arguendo*, that Foster Parents can satisfy the first two requirements of section 5324(4), they have not established, by clear and convincing evidence, that "[n]either parent has any form of care and control of the child." 23 Pa.C.S.A. § 5324(4)(iii). Regardless of the status of the dependency action, there is no dispute that the orphans' court returned Child to Father's care, and Child has remained in Father's care since October 2024. Foster Parents' apparent dissatisfaction with the outcome of the dependency action, as well as their opinions concerning Father's fitness as a parent, are not evidence that Father lacks care and control over Child. ***See M.S.***, 215 A.3d at 602 (concluding grandmother-intervenor's allegation that mother's behavior in allowing father to visit the child—after father's custodial rights had been suspended—was not the equivalent of a lack of care and control of the child).

Based upon the foregoing, we conclude the trial court did not err in denying Foster Parents' custody complaint for lack of standing.

Order affirmed.

Judge Beck joins the memorandum.

Judge Olson files a concurring memorandum.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

3/17/2026