J-S29001-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| RHONDA CATHERS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRADLEIGH ALDRICH, ROBERT | : | |
| ANDERSON, AND FRANK HOWELL, | : | |
| JR. | : | No. 213 WDA 2022 |
| | : | |
| | : | |
| APPEAL OF: BRADLEIGH ALDRICH | : | |

Appeal from the Order Entered January 21, 2022
In the Court of Common Pleas of Westmoreland County
Civil Division at No(s):  No. 1422 of 2017-D

BEFORE:   PANELLA, P.J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY PANELLA, P.J.:                    **FILED: OCTOBER 21, 2022**

Bradleigh Aldrich ("Mother") appeals from the order granting her legal

and primary physical custody and non-relative third-party Frank Howell, Jr.,

partial physical custody of Z.A. ("Child"),[1] born in August 2016. Mother argues

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Although this appeal is related to a custody action, we will use the parties' names in the caption "as they appeared on the record of the trial court at the time the appeal was taken." Pa.R.A.P. 904(b)(1). Notably, "upon application of a party and for cause shown, an appellate court may exercise its discretion to use the initials of the parties in the caption based upon the sensitive nature of the facts included in the case record and the best interest of the child." Pa.R.A.P. 904(b)(2); **see also** Pa.R.A.P. 907(a). Neither party has applied to this Court for the use of initials in the caption. We will, however, refer to Mother's son by his initials or as "Child" to protect his identity.

that Howell did not have standing to seek custody of Child, as he did not have legal custody or *in loco parentis* status. We affirm.

Following Child's birth, Mother and Child lived with her mother, Rhonda Cathers ("Maternal Grandmother") and her boyfriend, Howell. Subsequently, in October 2016, Mother relinquished custody of Child to Maternal Grandmother. In August 2017, Maternal Grandmother filed a petition for custody and an emergency petition, seeking legal and physical custody of Child.[2] Following a hearing, the trial court entered an order granting Maternal Grandmother standing and awarding her sole legal and primary physical custody of Child. The trial court further allowed Mother supervised periods of partial physical custody.[3]

In January 2018, after Maternal Grandmother would not allow Howell to see Child, he filed a petition to intervene in the custody proceedings, noting that he had been living continuously with Child since 2016 and that he had been providing for Child physically, emotionally, and financially. The trial court scheduled a hearing on Howell's petition. Mother was informed about the petition and the hearing but did not attend the hearing or file any preliminary objections, and no parties raised any oral or written objections to Howell's petition at the hearing. Ultimately, the trial court determined that Howell met

---

[2] Notably, Howell moved out of Mother's home in August 2017, but continued to care for Child.

[3] Child's father, R.A., was not involved in the custody proceedings.

the requirements to intervene in the action. Thereafter, the trial court entered an order, granting Maternal Grandmother and Howell shared legal custody, primary physical custody to Howell and partial physical custody to Maternal Grandmother. Further, the trial court indicated that Mother's custodial time remained supervised because she had not completed her mental health evaluation or anger management classes.

In October 2018, Mother filed an emergency petition alleging that Howell was inappropriately touching Child. The trial court suspended Howell's and Maternal Grandmother's physical custody and transferred custody to Mother. However, the trial court eventually denied Mother's emergency petition, and restored Howell's custody of Child.

Thereafter, in January 2019, the parties reached an interim agreement whereby Howell maintained sole legal and primary physical custody and Mother had expanded supervised partial physical custody. In July 2019, the parties reached another interim agreement, which further expanded Mother's custodial time and decreased the supervision.[4] Mother and Child enrolled in parent/child therapy and Mother continued her individual therapy. The trial court also strongly encouraged Mother and Howell to complete co-parenting classes since they had a contentious relationship. When the parties appeared

---

[4] Maternal Grandmother slowly removed herself from the custody action, and in November 2019, the trial court granted Maternal Grandmother's oral motion to withdraw as a party in the case.

at the custody trial in August 2020, the parties entered into another interim agreement that provided Mother with sole legal and primary physical custody of Child and Howell partial physical custody.

On April 22, 2021 Mother filed a motion to dismiss and a motion *in limine*, arguing that Howell no longer maintained standing and that Mother did not want Howell in Child's life. The trial court dismissed Mother's motions and scheduled the case for a custody trial. Mother appealed to this Court, which quashed the appeal. **See Cathers v. Aldrich**, 750 WDA 2021 (Pa. Super. filed Aug. 27, 2021) (*per curiam*).

After a custody trial, the trial court entered a custody order, granting Mother legal and primary physical custody of Child and Howell partial physical custody of Child. Mother filed a timely appeal, and a Pa.R.A.P. 1925(b) concise statement.[5]

Mother raises the following question for our review: "Did the Court err in providing intervenor Frank Howell custody over the minor child Z.A. when [] Howell lacked standing to sue for custody when he was not *in loco parentis* to Z.A.[?]" Mother's Brief at 10.

---

[5] We note that Mother failed to file her concise statement contemporaneously with her notice of appeal. **See** Pa.R.A.P. 1925(a)(2)(i) (providing that, in Children's Fast Track appeals, a Rule 1925(b) statement "shall be filed and served with the notice of appeal."); **see also** Pa.R.A.P. 905(a)(2) (same). Accordingly, this Court issued an order directing Mother to comply with Rule 1925(a)(2)(i) and (b). Mother complied with this Court's order; as a result, we decline to find her issue waived.

"Threshold issues of standing are questions of law; thus, our standard of review is *de novo* and our scope of review is plenary." ***Raymond v. Raymond***, 279 A.3d 620, 627 (Pa. Super. 2022) (citation omitted). "Determining standing in custody disputes is [an] issue that must be resolved before proceeding to the merits of the underlying custody action." ***C.G. v. J.H.***, 193 A.3d 891, 898 (Pa. 2018).

> The concept of standing, an element of justiciability, is a fundamental one in our jurisprudence: no matter will be adjudicated by our courts unless it is brought by a party aggrieved in that his or her rights have been invaded or infringed by the matter complained of. The purpose of this rule is to ensure that cases are presented to the court by one having a genuine, and not merely a theoretical, interest in the matter. Thus[,] the traditional test for standing is that the proponent of the action must have a direct, substantial and immediate interest in the matter at hand. Moreover[,] [i]n the area of child custody, principles of standing have been applied with particular scrupulousness because they serve a dual purpose: not only to protect the interest of the court system by assuring that actions are litigated by appropriate parties, but also to prevent intrusion into the protected domain of the family by those who are merely strangers, however well-meaning.

***M.W. v. S.T.***, 196 A.3d 1065, 1069 (Pa. Super. 2018) (citation and paragraph breaks omitted); ***see also C.G.***, 193 A.3d at 898.

Mother contends that Howell lacked standing to seek third-party custody over Child because he was not *in loco parentis* to Child at the time the trial court made the custody decision. ***See*** Mother's Brief at 18, 31. Mother argues that Howell is seeking to continue to remain in Child's life in defiance of her wishes and without regard for her relationship with Child. ***See id.*** at 19-20. To that end, Mother asserts that providing standing to Howell prevents her

from exercising her constitutional right to parent Child as she sees fit. *See id.* at 20. Mother claims that Howell has not articulated any threat to Child or established that she is an unfit mother. *See id.* at 22.

Mother further disputes the trial court's finding that she waived her standing claim by failing to raise it below. *See id.* Mother argues that "standing" and "*in loco parentis*" are synonymous under the Custody Act, and it was Howell's burden to establish that he was *in loco parentis* to Child by clear and convincing evidence to interfere with her relationship with Child. *See id.* at 22-25. Moreover, Mother maintains that a third-party who is granted *in loco parentis* status can lose such status through a change in circumstances. *See id.* at 28-29. Mother also claims that Howell did not have ongoing standing to continue to seek custody, highlighting that he did not have legal custody of Child. *See id.* at 29. Mother argues that Howell did not care for Child and was a "glorified babysitter," not a parent. *See id.* at 30-31; *see also* Mother's Reply Brief at 3 (unnumbered).

"Generally, the Child Custody Act does not permit third parties to seek custody of a child contrary to the wishes of that child's parents." *K.W. v. S.L.*, 157 A.3d 498, 504 (Pa. Super. 2017). However, the Act allows a third-party to have standing to seek custody of a child if they have *in loco parentis* status. *See* 23 Pa.C.S.A. § 5324(2); *see also K.W.*, 157 A.3d at 504. "The term *in loco parentis* literally means in the place of a parent." *Raymond*, 279 A.3d at 627 (citation and quotation marks omitted). "A person stands *in loco*

*parentis* when he assumes the obligations incident to the parental relationship without going through the formality of a legal adoption. The status of *in loco parentis* embodies two ideas; first, the assumption of a parental status, and second, the discharge of parental duties." ***Id.*** (citation and quotation marks omitted). Importantly, "[t]he third party in this type of relationship, however, can not place himself *in loco parentis* in defiance of the parents' wishes and the parent/child relationship." ***T.B. v. L.R.M.***, 786 A.2d 913, 917 (Pa. 2001); ***see also K.W.***, 157 A.3d at 505.

Moreover, our Supreme Court explained that one of the primary considerations in determining *in loco parentis* status is the effect of the third-party relationship upon the child's best interest:

> [W]hile it is presumed that a child's best interest is served by maintaining the family's privacy and autonomy, that presumption must give way where the child has established strong psychological bonds with a person who, although not a biological parent, has lived with the child and provided care, nurture, and affection, assuming in the child's eye a stature like that of a parent. Where such a relationship is shown, our courts recognize that the child's best interest requires that the third party be granted standing so as to have the opportunity to litigate fully the issue of whether that relationship should be maintained even over a natural parent's objections.

***T.B.***, 786 A.2d at 917 (citation omitted); ***accord M.J.S. v. B.B.***, 172 A.3d 651, 657 (Pa. Super. 2017).

Here, Howell testified that he began living with Child after Child came back from the hospital, and that after Mother relinquished custody of Child, he lived with Howell and Maternal Grandmother at their home. ***See*** N.T.,

1/5/22, at 10, 12; *see id.* at 14 (stating that Mother was not involved with Child after he began living with Howell and Maternal Grandmother and that Howell provided for Child's needs during this period). Howell stated that in August 2017, he moved out of the house he shared with Maternal Grandmother and moved into a new home. *See id.* at 12. At this time, Child resided with Howell, and Howell provided for all of Child's needs. *See id.* at 12, 14, 15-17.

Howell indicated he intervened in the child custody proceeding after Maternal Grandmother, who had custody at the time, attempted to take care of Child by herself, but could not do so. *See id.* at 18-19. Howell noted that after he intervened, he was given legal and physical custody of Child, but that as Mother improved her life, he voluntarily changed his custodial rights to give Mother more time with Child. *See id.* at 19-20. Further, Child calls Howell "pappy." *Id.* at 24.

Mother testified that she received notice of Howell's petition to intervene and understood that Howell wanted custody of Child. *See id.* at 61-62. Mother admitted that she did not attend the hearing on Howell's petition. *See id.* at 62-63, 80, 82-83. Mother also acknowledged that Howell was providing food, clothing, shelter, and medical care to Child. *See id.* at 66. Mother accepted that the court-administered custody evaluator, Dr. William E. Bush, filed a report recommending that it was not in Child's best interest to end his relationship with Howell. *See id.* at 67-68; *see also* Bush Report, at 5

("Howell's interactions and relationship with [Child] does appear to be such that [Child] perceives him as being a feature of his secure base. At this time, [Child] also appears to have a secure and loving attachment to [] Howell. … [R]emoving [] Howell from [Child's] life at this point in his development would not be in his best interest.").

Considering the evidence of record, the trial court found that Howell had standing:

> Mother's argument regarding standing should fail. It is undeniable that [] Howell has acted *in loco parentis* to [Child] from the time he was two months' old until the present date. From the time period when Mother left [Child] at 2-months' old with [Maternal Grandmother] and [] Howell until August 19, 2020 (nearly a four-year period), [] Howell was the primary custodian of [Child]. He provided for him physically, emotionally, and financially with virtually no help from Mother. Since August 2020, [] Howell continues to have regular and consistent periods of physical custody of [Child], and he provides for all of his needs during those periods without any assistance from Mother. Since [Child's] birth, [] Howell has been the one and only person who has always cared for him, and he has never removed himself from [Child's] life. For nearly the majority of [Child's] life, he has been the sole provider and caretaker of [Child]. … And when Mother reinserted herself into [Child's] life, [] Howell has encouraged her role as parent and voluntarily reduced his custodial time.

> Lastly, Mother argues that [] Howell has somehow "lost" standing in this custody matter for what appears to be Mother's belief that [] Howell no longer acts in a parental role and for her belief that [] Howell provides no benefits to [Child]. The only reason that Mother now argues that [] Howell has lost standing is because she no longer wishes for him to be a part of [Child's] life. Mother has not proffered any other reasons to support her position that [] Howell now lacks standing. As previously stated, [] Howell has always maintained a relationship with [Child] and has continuously acted *in loco parentis* to [Child].

Trial Court Opinion, 3/9/22, at 7.

We agree with the sound reasoning of the trial court. ***See id.*** Indeed, Mother failed to oppose Howell's assumption of parental duties, including declining to protest Howell's motion to intervene and not performing any parental obligations for a four-year period. Through this inaction, Mother acquiesced to the development of the *in loco parentis* relationship between Howell and Child, and Mother acted in a manner consistent with consenting to his *in loco parentis* status. ***See M.J.S.***, 172 A.3d at 657 (stating that a parent, through inaction, may acquiesce to the development of an *in loco parentis* relationship); ***see also In re C.M.S.***, 884 A.2d 1284, 1289 (Pa. Super. 2005) (holding that father demonstrated consent to adopted parents' *in loco parentis* status by failing to be involved in child's life for one year). Moreover, Howell continues to have consistent periods of physical custody of Child, and evidence was presented establishing that it would not be in Child's best interests to remove Howell from Child's life. ***See T.B.***, 786 A.2d at 917.

Additionally, Mother has presented no citation to case law to support the proposition that Howell was required to have legal custody to gain *in loco parentis* standing. ***See*** Trial Court Opinion, 3/9/22, at 2; ***see also M.J.S.***, 172 A.3d at 656 ("Pennsylvania jurisprudence simply does not support the contention that [g]randmother was required to assume the role of [the child's] sole parental figure in order to attain *in loco parentis* status."). While we agree with Mother that standing must be determined at the time parents filed petition to dismiss, rather than at the time the custody complaint was filed, to

account for any changed circumstances, *see M.W.*, 196 A.3d at 1071, the evidence of record establishes that Howell has *in loco parentis* status and, therefore, has standing to pursue custody of Child. *See Tracey L. v. Mattye F.*, 666 A.2d 734, 735 (Pa. Super. 1995) (concluding that "appellant, who not only acted *in loco parentis*, but also was previously awarded primary custody, clearly has standing" to challenge the custody order). Accordingly, we discern no error of law or abuse of discretion in the trial court granting Howell standing *in loco parentis* pursuant to Section 5324(2).[6]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/21/2022

---

[6] Mother does not raise any claims regarding the trial court's weighing of the custody factors under 23 Pa.C.S.A. § 5328(a). Therefore, we need not address the trial court's award of custody.