J-A25014-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: L.U. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: S.U. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 428 WDA 2022 |

Appeal from the Order Entered March 9, 2022,
in the Court of Common Pleas of Westmoreland County,
Orphans' Court at No(s): 075-2021.

| | | |
|---|---|---|
| IN RE: ADOPTION OF: Z.U. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: S.U. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1 WDA 2023 |

Appeal from the Order Entered March 9, 2022,
in the Court of Common Pleas of Westmoreland County,
Orphans' Court at No(s): 076-2021.

| | | |
|---|---|---|
| IN RE: ADOPTION OF: L.U. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: S.U. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2 WDA 2023 |

Appeal from the Order Entered March 9, 2022,
in the Court of Common Pleas of Westmoreland County,
Orphans' Court at No(s): 077-2021.

BEFORE: KUNSELMAN, J., NICHOLS, J., and McCAFFERY, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED: JANUARY 6, 2023**

S.U. (Father), *pro se*, appeals the orders issued by the Westmoreland County Orphans' Court, which dismissed his petition to terminate the parental rights of C.J. (Mother) regarding three of their Children. Father sought termination, arguing that Mother was merely a "gestational surrogate," who lacked the parental rights guaranteed by the Fourteenth Amendment of the United States Constitution. The orphans' court found that Father, a nonresident, turned to the Pennsylvania judiciary in order to attack the parties' operating custody order, which had been issued in West Virginia, where Mother and the Children reside. The orphans' court concluded it lacked jurisdiction to adjudicate the termination petition under Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). *See* 23 Pa.C.S.A. §§ 5401-5482. After careful review, we affirm.

We preface our recitation of the factual and procedural history with a note about the conception of the parties' Children. The parties' first child was conceived through intrauterine insemination (IUI) and is not the subject of this appeal. The remaining three Children were conceived through in-vitro fertilization (IVF). Mother carried the embryos and gave birth to them. Mother was listed as the mother on all three birth certificates, while Father

- 2 -

was listed as the father. Mother believed Father's sperm was used to conceive the Children, until she learned during the West Virginia custody litigation that this was not the case. ***See S.U. v. C.J.,*** Not Reported in S.E. Rptr, 2019 WL 5692550 at *1 (W.Va. 2019). "Before the parties met, Father underwent surgeries to correct unspecified 'anomalies' [….]" ***Id.*** During the West Virginia litigation, Mother became aware that the eggs used in the birth of the parties' Children actually came from Father, who had his own eggs harvested and stored years prior. ***Id.***[1]

In the record before this Court, Father has held himself out as "the father" in this matter. ***See, e.g.,*** Father's Brief at 16.[2] But Father has also referred to himself as "the mother" – because his eggs were used to conceive the Children – to advance his legal position. ***Id.*** at 3.

Father's position is that Mother has no parental rights, because the Children were conceived using his eggs, not hers, and because he was listed as the father on the Children's birth certificate. Thus, Father appears to argue that he is the mother in fact, and the father by law. Ultimately, Father's gender and biology is immaterial to our disposition. We highlight these facts

_____

[1] During the West Virginia litigation, Father had "testified that he was not a binary male or female at birth, although he has always considered himself to be male." ***See S.U.,*** 2019 WL 5692550 at *1. A court granted Father's petition to change the name on his birth certificate to his current name in 2002. ***Id.*** at *1, n.3. Although we are careful not to speculate, the record suggests Father was born with male and female reproductive organs.

[2] Father's gender was not addressed during the proceedings below, but based upon our review of the West Virginia litigation, it appears Father uses the "he/him" pronouns. Thus, we do the same.

- 3 -

only insofar as they clarify Father's legal position and the historical background

of this case, which the orphans' court set forth in great detail:

> Father is a registered nurse and nurse practitioner. It is unclear where Father currently resides, but Father previously resided in West Virginia.
>
> Mother resides in West Virginia. The parties, who were never married, were in a relationship for approximately 12 years, although the exact nature of their relationship is unclear.
>
> The parties have four children together, all of which were conceived nontraditionally. Father did not discuss his gender but testified that Father had his eggs harvested and stored.
>
> The parties first child, G.U., was born in 2011 and is not subject to these proceedings. This child was conceived through intrauterine insemination of Mother, which was performed by Father. While Mother believed that [Father] was the sperm donor for this procedure, Father did not provide sperm and an unidentified sperm donor was used. The parties' second child, L.U.[1], was conceived through IVF at Fertility Center in New York in 2014. The twins, Z.U. and L.U.[2], born in 2016, were conceived also through IVF.
>
> Mother is listed as the legal mother and Father is listed as the legal father on all three of the Children's birth certificates.
>
> On Father's Termination Petition, Father alleges that he is seeking to terminate the parental rights of a "Gestational Surrogate."
>
> A hearing on Father's Termination Petition was scheduled for August 18, 2021. Mother was represented by [by counsel],while [Father] appeared *pro se.*
>
> Father indicated that he had initially filed Petitions in Allegheny County in 2020. The Allegheny Court of Common Pleas found that Father needed to provide Mother with notice or obtain her consent. Since Father did neither, the Allegheny County Court of Common Pleas dismissed the

case without prejudice and the Superior Court of Pennsylvania affirmed. [**See In re Adoption of L.U.**, 256 A.3d 42 (Table), 2021 WL 1998454 (Pa. Super. 2021) (non precedential decision), *allowance for appeal denied,* 259 A.3d 890 (Pa. 2021)].

Father testified about the events which led to a custody order from Mason County, West Virginia. When L.U.[1] was born, the parties had no issues in their relationship. During Mother's pregnancy with the twins, Z.U. and L.U.[2], there were medical issues which caused her to be placed on bedrest. During this time, L.U.[1] became ill and had to be hospitalized for weeks. Father stayed with L.U.[1] while Mother was recovering.

For various reasons, the parties' relationship deteriorated during this time in which Mother was hospitalized. Shortly before the twins were born, Father filed a Petition for Declaration of Parentage and Motion to Seal Record in the Circuit Court of Kanawha County, West Virginia attempting to prevent Mother's name from being placed on the twins' birth certificates.

Following a two-day hearing in October 2017, the Family Court of Mason County, West Virginia entered a Final Allocation Order on February 6, 2018, detailing the custodial responsibilities of the parties. Mother was designated as the primary residential and custodial parent of the Children. Father was initially ordered to have custody every-other weekend.

Father has filed a multitude of actions and petitions since the custody order was entered awarding Mother primary custody. The Family Court of Mason County entered an Order prohibiting Father from making further *pro se* filings as the court believed Father was continuously attempting to undermine Mother's ability to parent the Children.

Father testified that he wished to terminate Mother's rights to allow for Father's Wife (C.U.) ("Stepmother"), to adopt the Children, as Father has consistently identified Mother as nothing more than a gestational surrogate who carried the Children to birth. Father testified that the Petition to Terminate Mother's rights is a "collateral attack" on the orders from West Virginia.

- 5 -

Father offered few details about his residency but stated that he had been a resident of Pennsylvania since 2020. Father indicated that he signed a monthly lease. The court was provided with a copy of the receipt from Airbnb which indicated that Father rented the unit from June through August 2021. Father provided the court with a notice from PennDOT stating that Father had changed his address on June 1, 2021. Father provided the court with a receipt indicated that he had physical therapy sessions for his shoulder thorough the summer in Pennsylvania.

Counsel for Mother alleges that Father is a vexatious litigator who attempts to present petitions in front of any court that will allow it.

Mother's counsel spoke to the Postmaster of the Post Office for Smithton, Pennsylvania, which indicated that the office would reject any mail sent to Father's address. Mother doubted the legitimacy of Father's residency, as the address Father provided was located above a bar that was listed on Airbnb as a rental unit which could be rented daily.

The orphans' court scheduled an additional hearing for October 8, 2021, to discuss any outstanding issues.

At the time of the second hearing, the court was made aware of a filing by Father in Ohio regarding this case. Father stated that he was unaware of this filing, while Mother argued that the filing was a further attempt by Father to initiate termination or custody proceedings in another jurisdiction.

At the time of the second hearing, Father had an appeal pending in Putnam County, West Virginia, regarding the custody order.

Father did not provide credible testimony regarding his residences. Father claimed that he was allowed to have two residences at once and he exhausted all of his remedies in West Virginia. Father acknowledged that the pending West Virginia appeal regarded the same issues complained of in the termination petition.

Father incredibly testified that the West Virginia Custody Order was created "out of thin air" without Father's consent.

Father did not agree with Mother's recitation of the West Virginia Orders and continuously said the orders were void because they were unconstitutional.

Father said multiple times in the hearing that Mother "kidnapped" the Children from him. Mother credibly testified that she was in a relationship with Father and the couple spent twelve years together. During the relationship, the two would attend events and family gatherings as a couple. The West Virginia Courts found Mother's testimony regarding the relationship to be credible.

Father argued that West Virginia incorrectly determined Mother to be credible and that Mother was nothing more than a "court-created psychological parent." Father maintained that the courts of West Virginia relied on an unconstitutional statute which makes the entire custody order void.

Mother testified that she lives in constant fear that Father will find a court that terminates her parental rights. She is constantly worried that the police will show up at her home and take the Children from her.

Father indicated that he had at least six appeals pending in West Virginia in addition to filings in other states. Stepmother also has appeals pending in West Virginia regarding adoption of the Children.

Father did not offer further testimony regarding their employment but stated that Pennsylvania is where their desired employment was located. Father did not state if he actually works in Pennsylvania.

In November 2021, the court was made aware that Father filed a petition for adoptions in the Superior Court of the District of Columbia. The court and the Superior Court of the District of Columbia had correspondence regarding the nature of the case. The D.C. Superior Court indicated that Father fraudulently claimed that the Children had lived with him since birth and the "gestational surrogate" was not involved in the Children's lives. Father provided an address in Washington, D.C., which was the address of a packing and shipping company. The D.C. Court was unaware of the custody proceedings in West Virginia and termination proceedings in Pennsylvania. The D.C. Court was unaware

that Mother was granted primary physical custody and that Father's custodial rights have been suspended.

A short hearing was held February 11, 2022, to discuss the proceedings that had occurred in the D.C. Court.

Father indicated that he began living in Washington, D.C., approximately one month before filing their D.C. petition. Father's D.C. petition was filed on November 2, 2021. Father indicated that he no longer lives in Westmoreland County, Pennsylvania at the time of the hearing and was temporarily living in West Virginia.

**See** Orphans' Court Opinion, 2-5 (not paginated), Findings ¶¶ 1-32 (cleaned up).

On March 9, 2022, the orphans' court dismissed Father's termination petition after concluding it lacked jurisdiction to adjudicate the claims. The court further awarded Mother counsel fees and directed counsel to submit an itemized bill within 14 days. The court issued three identical orders to correspond with each Child's docket.

Father filed a timely appeal, but in circumvention of Pa.R.A.P. 341 and **Commonwealth v. Walker**, 185 A.3d 969, 977 (Pa. 2018), Father failed to file separate notices of appeal to correspond with the three orders entered on each Child's docket. Instead, Father listed all three dockets on a singular notice of appeal. Violation of this Rule does not necessarily mean that the appeal will be dismissed. As our Supreme Court clarified in **Commonwealth v. Young**, 265 A.3d 462 (Pa. 2021), Pa.R.A.P. 902 affords this Court to take "such action as the appellate court deems appropriate, which may include, but is not limited to, remand of the matter to the lower court so that the omitted

procedural step may be taken." **See Interest of A.J.R.O.**, 270 A.3d 563, 569-70 (Pa. Super. 2022); **see also Commonwealth v. Young**, 280 A.3d 1049 (Pa. Super. 2022). Pursuant to Rule 902, this Court directed Father to file separate notices of appeal to comply with Rule 341. Father complied, and thus we may proceed with the merits of his appeals.

Father preserves the following issue for our review:

> Did the lower court violate the Fourth Amendment by failing to rule on the merits and/or terminate a gestational surrogate's false presumption of maternity that was created through a self-operative statute against the wishes of the biological mother ([i.e., the Father]).

Father's Brief at 3.

Father dedicates a large portion of his Brief to argue that Mother has no parental rights under the Fourteenth Amendment, because she is not a biological parent.[3] Father cites a considerable amount of case law, which is mostly inapposite to the matter at hand. The matter before us does not concern Mother's status as a parent, nor the legal implications of the same. Those issues were resolved by the West Virginia courts.[4] We will not address

---

[3] Under the Due Process Clause of the Fourteenth Amendment, a parent has a fundamental right "to make decisions concerning the care, custody, and control of the child." **See** U.S. Const. amend. XIV; **see also D.P. v. G.J.P.**, 146 A.3d 204 (Pa. 2016); **and see Troxel v. Granville**, 530 U.S. 57 (2000).

[4] **See S.U.,** 2019 WL 5692550, at *3.

them.[5]  We only address the portion of Father's argument that involves the orphans' court decision to decline jurisdiction.

The orphans' court concluded it did not have jurisdiction to adjudicate Father's termination petition under the UCCJEA.[6]  In addressing this issue, we are guided by the following standard of review:

> A court's decision to exercise or decline jurisdiction is subject to an abuse of discretion standard of review and will not be disturbed absent an abuse of that discretion.  Under Pennsylvania law, an abuse of discretion occurs when the court has overridden or misapplied the law, when its judgment is manifestly unreasonable, or when there is insufficient evidence of record to support the court's findings.  An abuse of discretion requires clear and convincing evidence that the trial court misapplied the law or failed to follow proper legal procedures.

*M.E.V. v. R.D.V.*, 57 A.3d 126, 129 (Pa. Super. 2012) (citations omitted).

"The purpose of the UCCJEA is to avoid jurisdictional competition, promote cooperation between the courts, deter the abduction of children, avoid relitigating custody decisions of other states, and facilitate the enforcement of custody orders of other states." *A.L.-S. v. B.S.*, 117 A.3d 352,

---

[5] "Although this Court is willing to liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon the appellant.  To the contrary, any person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing." *Commonwealth v. Adams*, 882 A.2d 496, 498 (Pa. Super. 2005) (citation omitted).

[6] The orphans' court also postulated that it lacked jurisdiction under 23 PA.C.S.A. § 2302 ("Venue"), because neither the parties nor the Children lived in Westmoreland County.  Given our disposition, we do not address this alternative basis.

356 (Pa. Super. 2015). The UCCJEA was also enacted to conform state law with the Parental Kidnapping Prevention Act ("PKPA"), 28 U.S.C. § 1738A, which is a federal law requiring "that states give full faith and credit to another jurisdiction's child custody determination made in compliance with the provisions of the PKPA." **R.M. v. J.S.**, 20 A.3d 496, 502-03 (Pa. Super. 2011); **see also** U.S. Const. Art. IV, § 1.

On appeal, Father reasons that the orphans' court erred when it applied the UCCJEA to dismiss the case. Father argues that the UCCJEA, by its own terms, does not apply to adoption proceedings. **See** Father's Brief at 26 (citing 23 Pa.C.S.A. § 5403 ("Proceedings Governed by Other Law")). Indeed, Section 5403 of the UCCJEA states, rather directly: "This chapter does not govern an adoption proceeding or a proceeding pertaining to the authorization of emergency medical care for a child." 23 Pa.C.S.A. § 5403.

Father's reliance on Section 5403 is misplaced for two reasons. First, Father's argument is predicated upon an incorrect assumption: that there are custody cases and then are adoption cases, and never the two shall meet. The Uniform Law Comment to Section 5403 explains that this provision exists as a housekeeping measure, and that there are times when the UCCJEA will apply to an adoption proceeding:

> Adoption cases are excluded from this Act [(UCCJEA)] because adoption is a specialized area which is thoroughly covered by the Uniform Adoption Act (UAA) (1994). Most states either will adopt [the UAA] or will adopt the jurisdiction provisions of [the UAA]. Therefore the jurisdictional provisions governing adoption proceedings are generally found elsewhere.

> ***However, there are likely to be a number of instances where it will be necessary to apply this Act in an adoption proceeding***.  For example…the UAA requires that if an adoption is denied or set aside, the court is to determine the child's custody. [] Those custody proceedings would be subject to [the UCCJEA].

23 Pa.C.S.A. § 5403 (Uniform Law Comment) (emphasis added).

Thus, even if this matter were "an adoption proceeding," we do not agree that the UCCJEA is *per se* inapplicable.  **See** 23 Pa.C.S.A. § 5402 (Uniform Law Comment) ("Proceedings that affect access to the child are subject to this Act.").  We need not resolve this issue, however, because Father's argument fails for a more definitive reason.

The second reason Father's argument fails is because this case does not involve an adoption proceeding at all; rather, this is a termination of parental rights proceeding.[7]  A termination proceeding is explicitly covered by the UCCJEA.  The UCCJEA defines a "child custody proceeding" as "a proceeding for divorce, separation, neglect, abuse, dependency, guardianship, paternity,

---

[7] An adoption proceeding comes after the termination proceeding.  Father understands this point well.  For he correctly recognizes that, in order to advance a cognizable termination petition against Mother, he had to aver that there was an anticipated adoption by Stepmother C.U. (Father's spouse). **See** 23 Pa.C.S.A. § 2903 (permitting a parent to consent to the adoption by a spouse (*i.e.* the stepparent) while keeping intact their own legal relationship with the child); **see also In re Adoption of M.R.D.**, 145 A.3d 1117, 1120 (Pa. 2016) ("Because a termination petition filed by one parent against the other must occur in the context of an anticipated adoption, and because adoption is a statutory right, we note that the parent seeking termination must strictly comply with all pertinent provisions of the Adoption Act in order for the adoption to be valid.")**.**

***termination of parental rights*** and protection from domestic violence, in which the issue may appear." 23 Pa.C.S.A. § 5402 (emphasis added).

It makes sense that the UCCJEA applies to termination proceedings. Under the rules of statutory construction, we must presume that the Legislature did not intend to produce "an absurd or unreasonable result." ***See, e.g., Raymond v. Raymond***, 279 A.3d 620, 630 (Pa. Super. 2022) (citing 1 Pa.C.S.A. § 1921(c)) (further citation omitted). We would reach an "absurd result" if the UCCJEA barred a Pennsylvania court from modifying a parent's out-of-state custody order (***see, e.g.,*** 23 Pa.C.S.A. § 5423 (Jurisdiction to Modify Determination)) but permitted the same Pennsylvania court to forever terminate that parent's custody rights. Not only would such a result be illogical, but it would also create the potential for parental misuse of our termination procedure.[8]

We are not dissuaded from our conclusion simply because the statutory provisions governing the involuntary termination of parental rights fall under the Adoption Act. ***See*** 23 Pa.C.S.A. §§ 2511-2514. The UCCJEA clearly governs the jurisdictional implications of involuntary termination proceedings

_____

[8] ***See, e.g., M.R.D.***, 145 A.3d at 1129 ("Given that the complete and irrevocable termination of parental rights is one of the most serious and severe steps a court can take, we must ensure that we do not open the floodgates to such gamesmanship."); ***see also M.R.D.***, 124 A.3d at 1134 (Wecht, J., Concurring) ("[T]o allow custody litigants to invoke [termination] petitions as a weapon would foster the creation of orphans and provide parents with a new, and in our view dangerous, tactic in heated custody disputes; indeed, one can imagine routine cross-petitions for termination as part of custody battles.") (further citation and quotation omitted).

involving one parent against the other. Courts must "presume that the General Assembly is familiar with extant law when enacting legislation." *Raymond*, 279 A.3d at 629 (citing *White v. Conestoga Title Ins. Co.*, 53 A.3d 720, 731 (Pa. 2012) (further citation omitted)).

Having concluded that the UCCJEA governs this proceeding, we now address whether the orphans' court properly applied the Act when it declined jurisdiction. Instantly, the courts in West Virginia have adjudicated the parties' custody litigation for years. In our view, the most applicable section of the UCCJEA is Section 5423 (Jurisdiction to Modify Custody Determination).[9] As noted above, the termination of a parent's rights is, at its core and to put it lightly, a modification of parental custody rights.

Section 5423 provides:

> Except as otherwise provided in Section 5424 (relating to temporary emergency jurisdiction) a court of this Commonwealth may not modify a child custody

---

[9] We might also conclude that the orphans' court lacked jurisdiction, because another forum – West Virginia – has jurisdictional priority under the "first in time rule." *See M.E.V. v. R.D.V.*, 57 A.3d 126, 129 (Pa. Super. 2012); *see also* 23 Pa.C.S.A.§ 5326 ("Simultaneous proceedings") (further citations omitted). But in order to reach this conclusion, we would first have to conclude that there are simultaneous proceedings in West Virginia. Although the parties' case has been the subject of extensive litigation in West Virginia, the current status of that litigation is unknown.

In any event, it is more prudent to analyze this matter under 5423 (Jurisdiction to Modify Custody Determination). The issue here is not exactly about which state is better suited to adjudicate the family's custody claim in the first instance. The issue is whether Father may turn to Pennsylvania to modify (or, in Father's words, "collaterally attack") the West Virginia custody order.

- 14 -

determination made by a court of another state unless a court of this Commonwealth has jurisdiction to make an initial determination under Section 5421(a)(1) or (2) (relating to initial child custody jurisdiction) and:

(1) the court of the other state determines it no longer has exclusive, continuing jurisdiction under Section 5422 (relating to exclusive, continuing jurisdiction) or that a court of this Commonwealth would be a more convenient forum under Section 5427 (relating to inconvenient forum); or

(2) a court of this Commonwealth or a court of the other state determines that the child, the child's parents and any person acting as a parent do not presently reside in the other state.

23 Pa.C.S.A. § 5423.

As applied, we first observe that the exception to Section 5423 – *i.e.*, Section 5424 (relating to emergency jurisdiction) – is not applicable; the Children are not even present in the Commonwealth, let alone in need of emergency protection. **See** 23 Pa.C.S.A. § 5424(a). With the exception to Section 5423 unavailable, we apply the rest of the statute.

For the Westmoreland County Orphans' Court to have jurisdiction to resolve the termination petition, the orphans' court needed jurisdiction to make "an initial custody determination" under Section 5421(a)(1) or (2). We conclude that the orphans' court correctly determined that it did not have jurisdiction to make an initial child custody determination. This is because: Pennsylvania was never the Children's home state;[10] nor was it that case that

---

[10] Section 5402 defines **"Home state"** as: "The state in which a child lived with a parent or a person acting as a parent for at least six consecutive months
*(Footnote Continued Next Page)*

- 15 -

no other state had jurisdiction (West Virginia plainly had jurisdiction); nor was it the case that West Virginia declined to exercise its jurisdiction on the ground that Pennsylvania was a more convenient forum. *See* 23 Pa.C.S.A. § 5421(a)(1), (2).

Our application of Section 5423 may end here. Yet, it bears noting that even if Father survived the inquiry thus far, he would still have to satisfy either Section 5423(1) or (2). Father would not survive those inquires either: West Virginia has not determined that it no longer has exclusive continuing jurisdiction; West Virginia has not determined that Pennsylvania would be a more convenient forum; and the Westmoreland County Orphans' Court has not determined that the Children and Mother left West Virginia. *See* 23 Pa.C.S.A. § 5423(1), (2).

Finally, we note the reason the orphans' court found most dispositive – that no one in this family lives in Pennsylvania. Thus, even if orphans' court determined that it had jurisdiction under the UCCJEA, the court still had the authority to decline to exercise its jurisdiction on the ground that Pennsylvania was an inconvenient forum. *See* 23 Pa.C.S.A. § 5427(a)-(b).

In short, the orphans' court did not error or abuse its discretion when it concluded that it lacked jurisdiction under the UCCJEA to adjudicate Father's

---

immediately before the commencement of a child custody proceeding. In the case of a child six months of age or younger, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period." 23 Pa.C.S.A. § 5402.

termination petition. The court's orders dismissing Father's petitions were proper.

Orders affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/6/2023